UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TYRELLE MOTRAY HENDERSON, JR.,

            Plaintiff,

v.

COUNTY OF KENT et al.,

            Defendants.

_____/

Case No. 1:24-cv-1026

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.14.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan. The events about which he complains occurred there. Plaintiff sues Kent County, as well as the following KCCF/county personnel in their official and personal capacities: Sheriff Michelle LaJoye-Young; Captain Brad Lyons; Lieutenants Unknown Pavlovic and Unknown Knot; Sergeants Unknown Clark, Unknown Krai, and Unknown Party #1; and Correctional Officers Unknown Sutton, Unknown Dunham, Unknown Norum, Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Shaverlier, Unknown Iacaboni, Unknown Peirce, Unknown Dominguez, Unknown Party #2, Unknown Party #3, Unknown Party #4, and Unknown Party #5.

On July 2, 2024, Defendant Iacaboni threw Plaintiff's lunch tray through the slot in the cell door, causing it to fall on the cell floor. (Compl., ECF No. 1, PageID.8.) Plaintiff alleges that the tray cracked and that the spoon fell off of the tray. (*Id.*) Plaintiff confronted Defendant Iacaboni about the incident, and Defendant Iacaboni told Plaintiff that he threw the tray because Plaintiff had "[taken] the food pass slot before." (*Id.*) Plaintiff states that at the time of this incident, he was on suicide watch with a video/audio camera right outside of his cell, as well as a camera inside the cell. (*Id.*)

Plaintiff was able to speak to Defendant Unknown Party #1 about the incident only "after taking measures to cover [his] cell camera and door." (*Id.*) According to Plaintiff, Defendant Unknown Party #1 "showed no interest in what happen[ed] to [Plaintiff's] tray." (*Id.*) Plaintiff contends that Defendant Unknown Party #1 and other officers "made threats of force so [Plaintiff] acted accordingly to the threats." (*Id.*) Plaintiff did not receive a replacement tray. (*Id.*) He claims further that his property "went missing off the []dayroom table." (*Id.*) Plaintiff received a disciplinary ticket for his "reaction" to Defendant Iacaboni throwing the tray and claims that Defendant Clark deprived him of a fair hearing. (*Id.*) Plaintiff claims that Defendant Clark "confused [him] and lied about the rules of the process," gave Plaintiff "15 days['] D.R.U. time,"[2] and "lied about when [Plaintiff] received the finding[s] of fact." (*Id.*) Plaintiff claims that Defendant Clark also hindered his ability to appeal the disciplinary finding. (*Id.*, PageID.9.)

---

[2] This Court has previously recognized that D.R.U. refers to the Disciplinary Restrictive Unit in the KCCF. *See Hartsfield v. Stelma*, No. 1:16-cv-1135, 2016 WL 6775475, at *1 (W.D. Mich. Nov. 16, 2016).

Plaintiff goes on to allege that on August 11, 2024, Defendant Peirce "timed [Plaintiff] in for false allegations of destructive actions." (*Id.*) According to Plaintiff, Defendant Peirce did so to retaliate against Plaintiff for complaining about an inmate that other inmates had complained about. (*Id.*) The next day, Plaintiff noticed that his pin number for using the phone and tablets had been changed. (*Id.*) He received a new pin from a deputy, and the deputy told Plaintiff that the pin had been changed on August 11, 2024. (*Id.*) Plaintiff "filed a report about the false report, three days['] cell restriction, and phone pin change with silent observer." (*Id.*) Defendant Knot subsequently told Plaintiff that "staff could take away [his] rights and privileges for no reason and told [Plaintiff] to continue to wait on grievances about other issues." (*Id.*) According to Plaintiff, Deputy "S" then started to "play [a] role in the retaliation[]." (*Id.*, PageID.9–10.) Defendant Peirce told Plaintiff not to speak to Peirce and that he would never give Plaintiff a tablet. (*Id.*, PageID.10.) Plaintiff tried to file a grievance, but Defendant Krai told him that it was a non-grievable issue. (*Id.*) Plaintiff claims further that on September 3, 2024, Deputy "S" "made false allegations about [Plaintiff] through the intercom . . . to have a reason to deprive [Plaintiff] of a tablet." (*Id.*)

Plaintiff next alleges that between June 28, 2024, and July 23, 2024, he was deprived of his one hour of dayroom time on numerous occasions. (*Id.*) Plaintiff contends that Defendants Krai, Sutton, Shaverlier, Dunham, Norum, two or three John Does, and one Jane Doe were responsible for these deprivations. (*Id.*) Plaintiff claims that he "suffered pain from physical harm [he] inflicted on [him]self due to such deprivations, and mental [and] emotional distress as a result." (*Id.*)

Next, Plaintiff contends that on July 13, 2024, Defendants Sutton and Shaverlier told Plaintiff through the intercom that they were only allowing him out of his cell for a 10 to 15 minute shower. (*Id.*, PageID.11.) When Plaintiff came out of his cell, he thought he would also get his one

hour of dayroom time because Defendant Shaverlier told him over the intercom that he could. (*Id.*) Plaintiff alleges further that during a safety check round, Defendant Sutton told him that he was going to make Plaintiff go back in his cell by force. (*Id.*) Plaintiff told Defendant Sutton what Defendant Shaverlier had said. (*Id.*) Defendant Sutton claimed that Plaintiff was refusing to go back into his cell and "called it in." (*Id.*) When Plaintiff spoke to Defendant Krai, he told Defendant Krai that he had not been out of his cell for two or three days and had not had his hour out. (*Id.*) Defendant Krai "did not show any care and told [Plaintiff] to go in the cell." (*Id.*) Plaintiff said, "ok but I feel mentally drained, and I don't think I can keep myself safe." (*Id.*) Defendant Krai cuffed Plaintiff, took Plaintiff's inmate handbook, and transported him to tier D1A. (*Id.*) Defendant Sutton transported Plaintiff's property to the new tier. (*Id.*) Plaintiff spoke to "psych" about what was going on and "told her to not upgrade [his] level because the deputies would use it as an opportunity to destroy [Plaintiff's] property." (*Id.*) Plaintiff claims that he discovered that several items of his property had been destroyed or were missing, including "commissary [items], legal case notes, songs, medical entertainment scripts, clothing line ideas, clothes," and notes Plaintiff had kept on "deputies['] names and jail deprivations." (*Id.*, PageID.11–12.) He only received his legal mail and some hygiene items. (*Id.*, PageID.12.)

Plaintiff contends that from September 13–14, 2024, Defendants Sutton, Shaverlier, Dunham, and Norum retaliated against Plaintiff for filing grievances by depriving him of dayroom time, tablets, and kites. (*Id.*) Defendants Sutton, Shaverlier, and Norum wrote false reports to keep Plaintiff in his cell with no dayroom time and only one shower between September 8 and September 17, 2024. (*Id.*) Plaintiff claims that Defendants Sutton, Shaverlier, Dunham, and Norum also changed his phone pin on July 28, 2024, which hindered Plaintiff from using the phone and

tablet. (*Id.*) According to Plaintiff, Defendant Krai ignored the grievance that Plaintiff submitted on August 28, 2024. (*Id.*)

Plaintiff asserts that Defendants Lyons, Knot, and Pavlovic "have all showed by either action or verbal/written statements that they have no care for what [Plaintiff is] going through." (*Id.*) Plaintiff also faults Defendant LaJoye-Young for failing to act despite Plaintiff contacting her multiple times, and faults her for failing to train her subordinates properly. (*Id.*) Plaintiff contends that Defendant LaJoye-Young has policies and customs for Kent County that allow her subordinates "to get away with said acts." (*Id.*, PageID.13.)

Based upon the foregoing, Plaintiff asserts violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*, PageID.14.) He also asks that the United States Attorney General bring charges against all Defendants pursuant to 18 U.S.C. §§ 3, 241, 242, and "any other applicable section." (*Id.*) Plaintiff also wants "written apol[o]gies from all deputies except Iacaboni." (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims against Kent County

As noted above, Plaintiff has named Kent County itself as a Defendant to this action. As an initial matter, Kent County may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, the county is liable only when an official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental

entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508.

Here, Plaintiff states in a conclusory fashion that Defendant LaJoye-Young has "policies and customs for Kent County that allow[] for her subordinates to get away with said acts." (Compl., ECF No. 1, PageID.13.) Plaintiff, however, fails to identify any specific customs or policies put into place by either Kent County or the Kent County Sheriff's Office that were the moving forces behind his alleged constitutional injuries. Accordingly, because Plaintiff fails to allege the existence of a specific policy or custom, Plaintiff fails to state a claim against Kent County. *See Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of Section 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). The Court, therefore, will dismiss Plaintiff's claims against Kent County.

### B.     Claims against Defendant Dominguez

Although Plaintiff has named Deputy Dominguez as a Defendant, he fails to mention Defendant Dominguez in the body of his complaint, much less allege that Defendant Dominguez took any action against him. Where a person is named as a defendant without an allegation of

specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff's claims against Defendant Dominguez, therefore, fall short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal for that reason alone. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss Defendant Dominguez.

### C.    Claims Seeking Criminal Charges

In addition to damages, Plaintiff asks that the United States Attorney General bring charges against all Defendants for violations of 18 U.S.C. § 3, 241, and 242, which impose criminal penalties for the deprivation of constitutional rights. (Compl., ECF No. 1, PageID.14.) However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *cf. Inmates of Attica Corr. Fac. v. Rockefeller*, 477 F.2d 375, 382–83 (2d Cir. 1973) (holding that a federal court cannot compel state prosecutors to commence a prosecution). Moreover, federal criminal statutes do not confer rights on private citizens. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (holding that "the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes" (citation omitted)). Accordingly, Plaintiff's claims seeking relief under 18 U.S.C. §§ 3, 241, and 242 will be dismissed.

### D.      Official Capacity Claims against Remaining Defendants

As noted *supra*, Plaintiff has named the individual Defendants in their official and personal capacities. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Here, that entity is Kent County. However, as discussed above, "[g]overnmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson*, 40 F. App'x at 89 (citing *Monell*, 436 U.S. at 692). The Court has already concluded that Plaintiff has failed to set forth any plausible claims against Kent County because he has failed to describe any policy or custom maintained by either Kent County or the Kent County Sheriff's Department that resulted in his injuries. For that same reason, Plaintiff's official capacity claims against all the individual Defendants will be dismissed.

### E.      Individual Capacity Claims against Remaining Defendants

#### 1.      Supervisory Liability Claims against Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1

Plaintiff suggests that Defendant LaJoye-Young failed adequately to train and supervise her subordinates and failed to take action despite Plaintiff contacting her on numerous occasions. Plaintiff also faults Defendants Lyons, Pavlovic, and Knot for showing "no care for what [Plaintiff] is going through," either through their inaction or verbal/written statements. (Compl., ECF No. 1, PageID.12.) Additionally, Plaintiff contends that Defendant Krai failed to take action based upon Plaintiff's grievances. Finally, Plaintiff suggests that after he spoke to Defendant Unknown Party #1 about Defendant Iacoboni's actions, Defendant Unknown Party #1 "showed no interest in what happen[ed] to [Plaintiff's] tray." (*Id.*, PageID.8.)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1 encouraged or condoned the conduct of any of their subordinates, or knowingly acquiesced in that conduct. Moreover, to the extent Plaintiff avers that Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1 failed to act upon his grievances, that is insufficient to impose Section 1983 liability. *See Summers*, 368 F.3d at 888; *Shehee*, 199 F.3d at 300. In any event, Plaintiff has no due process right to file a grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1 did not deprive Plaintiff of due process by rejecting his grievances.

Furthermore, Plaintiff's First Amendment right to petition the government was not violated by Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1's conduct during the grievance review process. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota*

*State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, Plaintiff has failed to set forth cognizable claims against Defendants LaJoye-Young, Lyons, Pavlovic, Knot, Krai, and Unknown Party #1, and Plaintiff's claims against them premised upon supervisory liability will be dismissed.

### 2.    First Amendment Claims

#### a.    Retaliation

Plaintiff contends that numerous Defendants violated his First Amendment rights by retaliating against him in several ways. Specifically, Plaintiff suggests that he was retaliated against when: (1) Defendant Iacoboni threw Plaintiff's lunch tray through the food slot; (2) Defendant Peirce changed Plaintiff's phone and tablet pin; and (3) Defendants Sutton, Shaverlier, Dunham, and Norum deprived Plaintiff of use of the tablets.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Accordingly, Plaintiff engaged in protected conduct when he filed written grievances and made oral complaints.

Plaintiff, however, did not engage in protected conduct when he "took the food pass slot" before Defendant Iacoboni threw Plaintiff's lunch tray through the slot. (Compl., ECF No. 1, PageID.8.) An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Erby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002).

15

It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted by* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that prisoner's statement that a hearing officer was "a foul and corrupted bitch" was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding was insolent and violated an MDOC policy directive and, thus, could not be protected conduct); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment). Because Plaintiff "took" his food slot before Defendant Iacoboni allegedly threw the lunch tray threw the slot and, therefore, did not engage in protected conduct, he cannot maintain his First Amendment retaliation claim against Defendant Iacoboni. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Iacoboni.

Nor can Plaintiff maintain retaliation claims against Defendants Peirce, Sutton, Shaverlier, Dunham, and Norum. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in

complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004). Furthermore, in prior cases, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad*, 379 F.3d at 417–18 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, although Plaintiff suggests that Defendant Peirce changed his pin because Plaintiff had complained about another inmate and that Defendants Sutton, Shaverlier, Dunham, and Norum denied him use of the tablets because of Plaintiff's grievances, Plaintiff has not presented any facts to support his conclusory assertions that they took these actions because Plaintiff had exercised his

First Amendment rights. Notably, Plaintiff does not set forth any facts regarding when he complained about the other inmate and when he filed the grievances at issue. Moreover, Plaintiff does not indicate when Defendants Sutton, Shaverlier, Dunham, and Norum denied him use of the tablets. Given the lack of such allegations, the Court cannot infer that Plaintiff's protected conduct and the adverse actions at issue occurred in "extremely close" temporal proximity. *See Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010). Accordingly, Plaintiff's First Amendment retaliation claims against Defendants Peirce, Sutton, Shaverlier, Dunham, and Norum will be dismissed as well.

### b.    Denial of Phones/Tablets

Plaintiff appears to suggest that Defendant Peirce violated his First Amendment rights by changing Plaintiff's pin number for the phones and tablets on August 11, 2024. (Compl., ECF No. 1, PageID.9.) Plaintiff indicates that on August 12, 2024, he received a new pin number from a deputy. (*Id.*) Plaintiff contends that Defendant Peirce told Plaintiff that he would never give him a tablet, and that Defendants Sutton, Shaverlier, and Dunham have also denied him the use of a tablet. (*Id.*, PageID.10, 12.)

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X*, 175 F.3d at 392.

18

While prisoners have a First Amendment right to communicate with the outside world, *see Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989), they do not have a constitutional right to a particular form of communication, such as access to email.[3] Here, Plaintiff provides no facts regarding why or for what reason he wanted to use the tablet but was denied by Defendants Peirce, Sutton, Shaverlier, and Dunham. Nevertheless, Plaintiff simply has no First Amendment right to use a tablet whenever and in whatever manner he desires.

Moreover, while prisoners have a right to "reasonable" access to a telephone, *see Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), Plaintiff's allegations do not suggest that

---

[3] *See*, *e.g.*, *Solan v. Zickefoose*, 530 F. App'x 109, 112 (3d Cir. 2013) (BOP Program Statement regarding Federal Bureau of Prisons prisoner email system (TRULINCS) is entirely consistent with 18 U.S.C. § 4042(a)(2), which authorizes the BOP to "provide for the safekeeping, care, and subsistence" of Federal prisoners); *Lineberry v. Fed. Bureau of Prisons*, 923 F. Supp. 2d 284, 293 (D.D.C. 2013) (citing cases and holding that prior iteration of BOP TRULINCS policy, PS 4500.11, is constitutional); *Hoffman v. Fed. Bureau of Prisons*, 2013 WL 5529612, at *3 (S.D. Ill. Oct. 7, 2013) (the BOP's Program Statement regarding email access "easily passes the reasonableness inquiry [and] has an obvious connection to the interests of protecting the public and maintaining prison security"); *Edington v. FCI Elkton*, No. 4:14CV2397, 2015 WL 1843240, at *3 (N.D. Ohio Apr. 22, 2015); *Bristow v. Amber*, No. 2:12–cv–412, 2012 WL 1963577, at *2–3 (S.D. Ohio May 31, 2012) (prisoners do not have a First Amendment right to access email); *Grayson v. Federal Bureau of Prisons*, No. 5:11CV2, 2012 WL 380426, at *3 (N.D.W. Va. Feb. 6, 2012) ("[P]risoners have no First Amendment constitutional right to access email."); *Rueb v. Zavaras*, No. 09-CV-02817, 2011 WL 839320, at *6 (D. Colo. Mar. 7, 2011) (holding that inmates do not have a First Amendment right to have access to email); *Holloway v. Magness*, No. 5:07cv88, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011) ("[A]ssuming that the free speech clause of the First Amendment requires prisons to permit communication between prisoners and persons outside the prison, . . . the First Amendment [does not require] that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation . . . ."); *Dunlea v. Federal Bureau of Prisons*, No. 3:10–CV–214, 2010 WL 1727838, at *2 (D. Conn. Apr. 26, 2010), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010) ("Because the use of TRULINCS was a privilege, the BOP and Warden Zickefoose had complete discretion in determining whether Dunlea was entitled to use TRULINCS at all or on a limited basis.").

he was completely deprived of access to the outside world. *Cf. Almahdi v. Ashcroft*, 310 F. App'x 519 (3d Cir. 2009) (holding that restriction of prisoner's telephone access to one phone call per month did not violate the First Amendment); *Miles v. Scanlon*, No. 1:21-cv-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (noting that inmates "do not have a constitutional right to a particular form of communication"); *Dallas v. Chippewa Corr. Facility*, No. 2:17-cv-198, 2018 WL 3829203, at *6 (W.D. Mich. Aug. 13, 2018) (dismissing prisoner's First Amendment claim premised upon a "refusal to allow him to use a phone every thirty days while on a break from sanctions"). Here, Plaintiff's complaint suggests that he was unable to use the phone for, at most, a day, as his pin was changed on August 11, 2024, and he received a new pin on August 12, 2024.

In sum, Plaintiff's complaint, as pleaded, does not permit an inference that Plaintiff was completely cut off from communication from the outside world when he was unable to use the phone and tablet at the times that he wanted to use them. Accordingly, any intended First Amendment free speech/association claims will be dismissed.

### 3.    Fifth Amendment Claims

Plaintiff also contends that the Defendants violated his rights under the Fifth Amendment. The Court notes that "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *see also Owens v. Trulock*, No. 1:18-CV-00167-GNS-HBB, 2020 WL 376658, at *3 (W.D. Ky. Jan. 23, 2020); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372–73 (S.D.N.Y. 2005) ("Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause."). Here, Defendants are all county actors. Accordingly, because this case does not involve any federal actors, the Fifth

20

Amendment does not apply. The Court, therefore, will dismiss Plaintiff's Fifth Amendment claims.

### 4.    Eighth/Fourteenth Amendment Claims

Plaintiff contends that several of the named Defendants violated his Eighth and Fourteenth Amendment rights in numerous ways. Plaintiff, however, is a pretrial detainee. Pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, the limitations on punishment that appear in the Eighth Amendment do not apply to pretrial detainees. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

Pretrial detainees are instead protected under the Due Process Clause of the Fourteenth Amendment. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). All of Plaintiff's Fourteenth Amendment claims concern various conditions of his confinement at the KCCF. Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in 2015, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more

21

than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). He or she must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Under that prong, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth [or Fourteenth] Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### a.    Food Tray

First, Plaintiff takes issue with the fact that he did not receive a replacement lunch tray after Defendant Iacoboni threw Plaintiff's tray through the food slot in his cell door.

With respect to meals, "[c]ourts have consistently found that missing a single meal does not rise to the level of a constitutional violation." *Marr v. Case*, No. 1:07-cv-823, 2008 WL 191326, at *3 (W.D. Mich. Jan. 18, 2008); *see also Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for 15 days did not

violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health). Accordingly, while the Court does not condone the throwing of Plaintiff's lunch tray through the food slot, the fact that Plaintiff missed one meal does not rise to the level of a Fourteenth Amendment violation. Accordingly, Plaintiff's Fourteenth Amendment claim against Defendant Iacoboni will be dismissed.

### b.    Threats of Force

In his complaint, Plaintiff suggests that he was subjected to threats of force by Defendants Unknown Party #1 and Sutton. Plaintiff, however, provides no facts to support his conclusory assertions. Although unprofessional, the alleged threats of force by Defendants Unknown Party #1 and Sutton do not rise to the level of a constitutional violation under the Fourteenth Amendment. *See Ivey*, 832 F.2d at 955; *see also Jones v. Porter*, No. 99–1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) (concluding that "Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level"); *Clark v. Turner*, No. 96–3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) (stating that "[v]erbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights"). Accordingly, Plaintiff's Fourteenth Amendment claims against Defendants Unknown Party #1 and Sutton premised upon threats of force will be dismissed.

### c.    Disciplinary Proceedings

Plaintiff contends that he received a rule violation notice for his reaction to Defendant Iacoboni's response to throwing the lunch tray. (Compl., ECF No. 1, PageID.8.) Plaintiff alleges that Defendant Clark deprived him of a fair disciplinary hearing by lying about the rules of the process, sanctioning Plaintiff with 15 days of D.R.U. time, and lying about when Plaintiff received the findings of fact. (*Id.*) Plaintiff also contends that Defendant Clark hindered Plaintiff's right to appeal in a timely manner. (*Id.*, PageID.9.)

Under *Sandin v. Conner*, 515 U.S. 472 (1995), a prisoner is entitled to due process protections only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id.* at 487. Within the Sixth Circuit, the question of whether the *Sandin* "hardship" tests governs the procedural due process claims raised by pretrial detainees is unsettled. *See Johnson v. Grayson Cnty., KY Det. Ctr.*, No. 21-5772, 2022 WL 3479501, at *2 (6th Cir. May 27, 2022) (acknowledging that there is "no precedent deciding this issue either way."); *see also Cornett v. Webb*, No. CIV.A. 02-400, 2004 WL 3437504, at *5 (E.D. Ky. May 13, 2004) (recognizing "some issue" as to whether *Sandin* applies to pretrial detainees and collecting cases). The Sixth Circuit and this Court have previously applied the *Sandin* test to pretrial detainees' claims regarding placement in segregation. *See Polk v. Parnell*, 132 F.3d 33 (6th Cir. 1997) (short stay in disciplinary segregation was not such an atypical and significant hardship as to create a liberty interest requiring due process); *Webb v. Bucholtz*, No. 1:20-CV-1036, 2021 WL 804721, at *3 (W.D. Mich. Mar. 3, 2021) (10-month placement in segregation fails to implicate a liberty interest entitling detainee to due process).

In any event, the Court need not conclusively determine whether *Sandin* governs Plaintiff's claim because Plaintiff has not sufficiently alleged a Fourteenth Amendment procedural due process claim against Defendant Clark. Plaintiff received 15 days in the DRU (Disciplinary Restrictive Unit) as a result of the rule violation. The Court presumes that the DRU is akin to segregation. However, as noted *supra*, short stays in segregation fail to implicate a liberty interest that entitle detainees to due process. *See Webb*, 2021 WL 804721, at *3. Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen

years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Accordingly, because Plaintiff's disciplinary process and 15 days in the DRU did not implicate a liberty interest, he cannot maintain a Fourteenth Amendment due process claim against Defendant Clark. Accordingly, that claim will also be dismissed.

### d.    Deprivation of Dayroom Time

Plaintiff also alleges that Defendants Krai, Sutton, Shaverlier, Dunham, Norum, and Unknown Parties #2–5 violated his due process rights by denying him his one hour per day of dayroom time on numerous occasions between June 28 and July 23, 2024. (Compl., ECF No. 1, PageID.10.) Plaintiff states that he "suffered pain from physical harm [he] inflicted on [him]self due to such deprivations, and mental [and] emotional distress as a result." (*Id.*)

The denial of dayroom time is not an extreme deprivation that rises to the level of a Fourteenth Amendment claim. The Seventh Circuit has concluded that a plaintiff who was confined to segregation for 70 days and therefore was not permitted to use the dayroom failed to set forth a valid due process claim. *See Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997). Moreover, Plaintiff does not set forth any facts suggesting that he was deprived of any basic human needs by not receiving his dayroom time. Although Plaintiff suggests that he hurt himself because of the lack of dayroom time, he fails to set forth any facts from which the Court could infer that Defendants Krai, Sutton, Shaverlier, Dunham, Norum, and Unknown Parties #2–5 were aware of Plaintiff's self-harming behavior and deliberately and recklessly ignored any risk of harm. *See Brawner*, 14 F.4th at 596. The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment

claims against Defendants Krai, Sutton, Shaverlier, Dunham, Norum, and Unknown Parties #2–5 premised upon the denial of dayroom time.

### e.  Deprivation/Destruction of Property

Next, Plaintiff takes issue with the deprivation of various items of his property when he was moved to tier D1A on July 13, 2024. (Compl., ECF No. 1, PageID.11.)

Plaintiff's claim, however, is barred by the doctrine set forth in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state (or county) employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). The *Parratt* court further recognized that meaningful post-deprivation remedies "can satisfy the requirements of procedural due process" where the State is faced with "either the necessity of quick action . . . or the impracticality of providing any meaningful predeprivation process." *Parratt*, 451 U.S. at 539; *see also Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995) ("a post-deprivation or common-law tort remedy may be constitutionally adequate where pre-deprivation process is impractical" (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982))).

Here, Plaintiff does not allege any reason why a state court action would not afford him complete relief from the deprivation, either negligent or intentional, of his personal property. *See Parratt*, 451 U.S. at 539; *see also Copeland*, 57 F.3d at 479–80. Notwithstanding Plaintiff's omission, "Michigan [state law] provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver[y], [and] Mich. Com. Laws

§ 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained." *Copeland*, 57 F.3d at 480. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.

In sum, Plaintiff has failed to sustain his burden of alleging that he was deprived of his property without due process. Accordingly, his Fourteenth Amendment due process claims premised upon the deprivation of his property will be dismissed.

### f.    Denial of Showers

Plaintiff also vaguely suggests that he only received one shower between September 8, 2024, and September 17, 2024, and that the denial of other showers is attributable to Defendants Sutton, Shaverlier, and Norum. (Compl., ECF No. 1, PageID.12.)

The Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (finding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (concluding that the denial of showers and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White*

*v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (concluding that an 11-day stay in an unsanitary cell was not unconstitutional because of the relative brevity of the stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The refusal to allow the occasional shower constitutes a mere temporary inconvenience. *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (finding the denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (finding the denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (finding the deprivation of a single shower does not implicate the Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment).

Even though Plaintiff alleges that he was only permitted to shower once between September 8 and 17, 2024, he does not allege that he was denied the ability to maintain hygiene on the days he was not allowed to shower. Moreover, Plaintiff fails to set forth any facts to support his conclusory assertion that Defendants Sutton, Shaverlier, and Norum denied him showers. Plaintiff's complaint regarding showers simply does not rise to the level of a Fourteenth

Amendment violation. Accordingly, his claims against Defendants Sutton, Shaverlier, and Norum premised upon the denial of showers will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    October 22, 2024                     /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        United States Magistrate Judge